Stanley Sagner v. Commissioner.
Sagner v. Commissioner
Docket No. 37089.
United States Tax Court
1953 Tax Ct. Memo LEXIS 48; 12 T.C.M. (CCH) 1355; T.C.M. (RIA) 53378; November 30, 1953
*48 Held that the redemption of the 125 shares of preferred stock of Treff, Inc. held by petitioner was not made at such time and in such manner as to be essentially equivalent to a taxable dividend. Lyon L. Tyler, Jr., Esq., for the petitioner. J. Nelson Anderson, Esq., for the respondent VAN FOSSAN Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of petitioner determined for the taxable year 1946, in the amount of $7,754.26. At the hearing and on brief, respondent has conceded certain factors that would have the effect of reducing such determination to $5,748.94. One issue raised by the pleadings has apparently been abandoned by petitioner. The sole issue remaining for our consideration is whether the distribution to petitioner during the taxable year in partial redemption of 5 per cent cumulative preferred stock of Treff, Inc. was essentially equal to the distribution of a taxable dividend. Findings of Fact The stipulation of facts filed by the parties with exhibits attached is adopted, and, by this reference, incorporated herein. Petitioner, Stanley Sagner, is an individual residing in Baltimore, Maryland. *49 He filed his income tax return for the calendar year 1946 with the collector of internal revenue for the district of Maryland at Baltimore. In 1946 and 1947, petitioner was a stockholder in Treff, Inc. Treff, Inc. was incorporated on April 2, 1946, with an authorized capital of $300,200, consisting of 200 shares of common stock with a par value of $1 per share and 3,000 shares of 5 per cent cumulative preferred stock with a par value of $100 per share. The original and only stockholders were Cowens, Inc. and petitioner, each of whom held 100 shares of common stock and 250 shares of preferred stock, or 50 per cent ownership each in the corporation, for which common and preferred stock each of such stockholders invested the sum of $25,100 in cash. The holders of the authorized 200 shares of common stock of Treff, Inc. exercised the sole voting power of the corporation, and the entire control of the affairs and operations of the corporation was vested in them as holders of such stock. By agreement dated April 10, 1946, Cowens, Inc. and petitioner, as the sole equal owners of the common stock, limited and restricted their respective power to sell, encumber, transfer by gift or otherwise, *50 or alienate in any manner, conditionally or absolutely, such common stock. Among other broad and general powers granted by its Certificate of Incorporation, Treff, Inc. was specifically empowered to engage in the business of a merchant of, and to buy or otherwise acquire, to sell or otherwise dispose of, at wholesale or retail, clothing, wearing apparel, and merchandise of every kind, and to own and operate stores for the sale thereof. At or about the time of its incorporation, the original and only issue of stock by Treff, Inc. consisted of all of its authorized common stock of 200 shares and only one-sixth, or 500 shares, of its total authorized preferred stock of 3,000 shares. The corporate stockholder, Cowens, Inc., was represented by Samuel Cowen and Irving Kovens. Petitioner's principal function with respect to Treff, Inc. was to supply through his own organization, A. Sagner's Son, Inc., or through any other source that he might find necessary, the garments Treff, Inc. needed for sale by it, and to see that such garments were delivered in the manner prescribed. Samuel Cowen was responsible for the day to day operation of Treff, Inc. in its retailing function. An outlet for *51 the purpose of retailing men's clothing was opened by Treff, Inc. and first began operation on May 1, 1946, as a leased department in Cowens, Inc. in premises occupied by it in its operation of a retail clothing business in Baltimore, Maryland. The space occupied by Treff, Inc. in conducting a department in the store of Cowens, Inc. was acquired under a lease agreement with Cowens, Inc. dated April 10, 1946. The rental agreement established the conditions under which Cowens, Inc. permitted Treff, Inc. to occupy the front portion of the third floor of its store and to sell certain men's clothing at such location, and further provided that Cowens, Inc. receive, as rental therefor, a certain percentage of the annual gross sales made by Treff, Inc. Under the lease agreement, Cowens, Inc. agreed to permit Treff, Inc. to have 20 per cent of the window space for the display of its merchandise and to furnish, without charge of any kind, light, heat, water, telephone, sales checks, mailing list of all departments, wrapping paper, twine, delivery service, cashier, porter and similar services necessary for the conduct of the department to be operated by Treff, Inc., plus the installation and *52 maintenance of air conditioning units in such space, it being expressly understood that Treff, Inc. would not pay the salaries, or any part thereof, of the executives of Cowens, Inc. Sixty per cent of the total cost of busheling or making alterations to garments of the combined total sales made by the parties to the agreement was to be paid by Treff, Inc. and 40 per cent by Cowens, Inc. All of the cost of advertising of Treff, Inc. was to be borne by it, which advertising was to be approved by and placed through Cowens, Inc. The lease agreement further provided that Treff, Inc. hire its own employees at its own expense; that it have on hand at all times, subject to its control, a representative stock of merchandise; that Treff, Inc. keep and maintain separate inventory records and separate books with respect thereto; that each party keep records and books showing the volume of sales made by it, such records and books to be available for inspection by the other party at all reasonable times; that Treff, Inc., its representatives and customers have free access to its department or space during the usual business hours of the day and that it have access thereto at all reasonable times *53 after business hours; and that an accounting be made between the parties on the fifteenth day of each month after the commencement of business. The main purpose underlying the organization of Treff, Inc. was ultimately to inaugurate a series of clothing stores or departments, along the east coast of the country. To this end, some effort was made up until July, 1946, to find suitable locations in other cities. Shortly after the opening by Treff, Inc. of its first department in Cowens, Inc., difficulties and dissension began to develop between petitioner and Cowen. Differences arose principally over the manner in which Cowen was running the business of Treff, Inc. The initial attempts of Treff, Inc. to find retail outlets in other cities, which in the opinion of petitioner and Cowen were suitable to its purposes, were not successful, which fact, coupled with the growing dissension between petitioner and Cowen, led to a decision on the part of Treff, Inc. to abandon its intention and plan to expand into a chain store operation. Following such decision, the board of directors of Treff, Inc., on July 8, 1946, after full discussions, unanimously adopted a resolution reading as follows: *54 "RESOLVED, that the Board of Directors of Treff Inc., by unanimous vote, deems it advisable that Articles of Reduction be prepared, approved and executed which reduce the amount of issued and outstanding preferred capital stock of the corporation from five hundred (500) shares having a par value of One Hundred Dollars ( $100) per share to two hundred fifty (250) shares of the same par value, and that the issued and outstanding common capital stock of the corporation shall not be affected in any manner by the said reduction; and that a meeting of the stockholders of the corporation should be called and held to take action thereon." The stockholders' meeting referred to in the foregoing resolution was held on July 10, 1946. The minutes thereof recited that the proposed reduction of the preferred capital stock was considered and fully discussed by the stockholders; that it was decided that each of the parties holding an equal amount of the issued and outstanding preferred capital stock of the corporation would have such holdings reduced by 50 per cent, thereby reducing the holdings of each of the stockholders to 125 shares of preferred stock; and that the issued and outstanding common *55 stock of the corporation should not be affected in any manner by the proposed reduction. Articles of Reduction of Treff, Inc. were prepared and the approval thereof by the State Tax Commission of Maryland was obtained on July 26, 1946. Thereupon, by checks dated July 26, 1946, Treff, Inc. paid the sum of $12,500 to each of its stockholders, Cowens, Inc. and petitioner, which amount was equal to $100 per share of 50 per cent of the preferred stock held by each as provided in the Articles of Reduction. Treff, Inc. continued in operation until March 26, 1947. Following appropriate action by its board of directors and stockholders on April 15, 1947, it was formally dissolved. As a result of the liquidation of Treff, Inc., petitioner, in 1947, received $24,626.24, which amount was declared in his income tax return for the calendar year 1947. In such return, the cost of petitioner's stock in Treff, Inc. was shown to be $12,600. Treff, Inc. was dissolved prior to completing a full year of actual operation and in the 11 months of its operation, from May 1, 1946, to March 26, 1947, it realized net earnings or profits before taxes of $24,508.74, and after taxes of $18,881.56. The holders *56 of the preferred stock of Treff, Inc. were entitled to receive out of the earnings, surplus or net profits of the corporation, cumulative dividends at the rate of 5 per cent per annum and no more. Such dividends were to be paid before the payment of any dividends upon the common stock. The preferred stockholders were not entitled to vote or to participate in the management of the affairs of the corporation. The profit and loss statement of Treff, Inc. for the period May 1, 1946, to June 30, 1946, discloses that its earnings or profits before taxes on June 30, 1946, after two months of operation, were in the amount of $26,184.29. Such statement was prepared in the latter part of August or early in September, 1946. The profit and loss statement of Treff, Inc. covering the period May 1, 1946, to November 30, 1946, shows that such earnings or profits at July 31, 1946, were $31,514.42. The balance sheet of Treff, Inc., as of June 30, 1946, disclosed assets in the amount of $89,045.36, of which $36,918.18 was cash in the bank, and current liabilities totaling $12,661.07. This balance sheet was prepared in late August or early September, 1946. The redemption of 125 shares of preferred *57 stock of Treff, Inc. held by petitioner was not made at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend. Such redemption constituted a partial liquidation of Treff, Inc. Opinion VAN FOSSAN, Judge: The sole issue is whether the distribution by Treff, Inc., during the taxable year, of $12,500 to petitioner in redemption of 125 shares of its preferred stock held by him constituted a taxable dividend pursuant to section 115 (g), Internal Revenue Code. [1]
The question presented is entirely one of fact for the disposition of which *58 there exists no sole or universally applicable test. Each case stands on its own facts. William H. Grimditch, 37 B.T.A. 402. Thus, decided cases offer little help except to point up the important elements to be considered, namely, "* * * the presence or absence of a real business purpose, the motives of the corporation at the time of the distribution, the size of the corporate surplus, the past dividend policy, and the presence of any special circumstance relating to the distribution." Joseph W. Imler, 11 T.C. 836. Our ultimate finding of fact set out above is dispositive of the instant case. Petitioner has shown the existence of a real business purpose in the redemption by Treff, Inc. of a portion of its capital stock. The need for cash capital had declined by reason of the decision to abandon the initial plan to open additional retail outlets. This decision represented a contraction of the original purposes underlying the formation of the corporation, within approximately 70 days of its inception. The distribution in redemption being conceived and carried out under such circumstances, the provisions of section 115 (g), supra, are not applicable. Cf. also *59 G. E. Nicholson, et al., 17 T.C. 1399. Decision will be entered under Rule 50. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(g) Redemption of Stock. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.↩